

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 28, 1958

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-477

Re: Proper interpretation to
be placed on Sub-section
2 of Section 2a of Arti-
cle 7047b relating to the
amount of taxes to be
paid on gas where the
seller has an escalator
clause in their contract-
-when the final decision
of the Federal Power Com-
mission is pending.

Dear Mr. Calvert:

You request the opinion of this office upon the ques-
tions presented in your letter of June 12, 1958. For a
better understanding of the questions and the factual basis
upon which they are predicated, we quote the pertinent part
of your letter as follows:

"Article 7047b, V.A.C.S. levies a tax on the business
and occupation of producing gas within this State
based on the market value of the gas as and when
produced.

"Section 2 of Article 7047b, V.A.C.S. reads as follows:

'The market value of gas produced in this
State shall be the value thereof at the
mouth of the well; however, in case gas
is sold for cash only, the tax shall be
computed on the producer's gross cash re-
ceipts. Payments made by purchasers to pro-
ducers for the purpose of reimbursing such
producers for taxes due hereunder shall not
be considered a part of the producer's gross
cash receipts. In all cases where the whole
or a part of the consideration for the sale
of gas is a portion of the products extracted
from the producer's gas or a portion of the
residue gas, or both, the tax shall be com-
puted on the gross value of all things of
value received by the producer, including
any bonus or premium;'

"Sub-section 2 of Section 2a of Article 7047b, V.A.C.S. reads as follows:

'When it shall appear that a taxpayer to whom the provisions of this Article shall apply has erroneously paid more taxes than were due during any taxpaying period either on account of a mistake of fact or law, it shall be the duty of the State Comptroller to credit the total amount of taxes due by such taxpayer for the current period with the total amount of taxes so erroneously paid.'

"The Federal Power Commission has suspended various applications for scheduled contract rate increases on gas sales subject to Federal Power Commission regulation. The Natural Gas Act provides that if a final decision has not been rendered within five months following the proposed effective date of the increased rate on motion of the filing producer, the proposed rate change shall go into effect. In this event, where increased rates become effective, the Commission may require the producing company to furnish a bond or file under 'Corporate Undertaking' (in lieu of bond) to refund any amounts ordered by the Commission, pending a hearing and final decision. In the event the Commission in its final decision disallows the rate increase, the amounts collected under 'Corporate Undertaking' or under bond plus interest at six per cent per annum must be refunded to the purchaser of the gas.

"Gas sales affected by this procedure fall into two categories; (1) sale from leases and (2) residue sales from gasoline plants.

"A question has arisen as to whether the gas production tax provided for by Article 7047b, V.A.C.S. is due on the increased rates received under bond or under 'Corporate Undertaking' at the time that the amounts are collected or whether the tax becomes due at the time the Federal Power Commission reaches a final decision. It is my understanding that it may be as long as five years before a final decision is reached in some of the cases now pending.

"A number of the taxpayers are currently remitting the tax on the rate increases received under bond

or under 'Corporate Undertaking' and have indicated
that should the Federal Power Commission in its final
decision require that part or all of the increased
rates be refunded that credit will be taken against
future gas production taxes for the amount of tax
previously paid on that part of the rate increase
refunded."

You asked two questions, as follows:

QUESTION NUMBER ONE:

"Please advise me whether or not the tax becomes
due at the time the increased rate is received
under bond or 'Corporate Undertaking' on sales
from leases and residue sales from gasoline plants
or whether it is due at the time the Federal Power
Commission reaches a final decision."

QUESTION NUMBER TWO:

"If your answer is that the tax becomes due at the
time the increases are received under bond or 'Cor-
porate Undertaking', please advise me whether or
not the taxpayer will be entitled to take credit
against future gas production taxes for the tax
paid on any part or all of the rate increase re-
quired to be refunded by the Federal Power Commis-
sion in its final decision."

The pertinent portion of Article 7047b, Vernon's Civil
Statutes, which levies this tax, is as follows:

"Section 1(1). There is hereby levied an occupa-
tion tax on the business or occupation of producing
gas within this State, computed as follows:

"(a)   From the effective date of this Act
        until September 1, 1955, a tax shall
        be paid by each producer on the amount
        of gas produced and saved within this
        State equivalent to nine per cent (9%)
        of the market value thereof as and when
        produced;

"(b)   From September 1, 1955, until September 1,
        1956, the rate of said tax shall be eight
        per cent (8%) of the market value of the
        gas as and when produced.

> "(c) From and after September 1, 1956, the rate of said tax shall be seven per cent (7%) of the market value of the gas as and when produced."

You will observe that under sub-section (a) the tax is levied upon the market value of the gas "as and when produced," and the same language is used in sub-section (b) and (c). Therefore, under the plain terms of the statute, the tax accrues as and when produced and is payable at the time and in the manner prescribed by sub-section (c) of Article 7047b, V.C.S.

You will also observe that the tax is calculated upon the market value of the gas. The Supreme Court has said that the term "market value" is the price for which the producer sells his gas. W.R. Davis, Inc., v, State 142 Tex. 637 180 S.W. 2d 429. It is quite apparent that the producer sells the gas not only at the permissible rate prior to the rate increase but in addition to the increased rate effective under a bond or Corporate Undertaking. Stated another way, the producer sells the gas at the permissible rate and in addition thereto the increased rate or both combined and the tax accrues on the combined rates "as and when produced" and is payable at the time and in the manner prescribed by the statute.

Therefore, in answer to your question Number One, you are advised that the tax should be calculated by taking into account the increased rate which the producer may receive under a bond or Corporate Undertaking, and this, regardless of whether the increased rate is from leases or residue gas from gasoline plants. Payment of the tax may not be postponed until the final determination by the Federal Power Commission of the validity of producer's application for the increased rate.

In answer to question Number Two, you are advised that if the increased rate should finally be disallowed by the Federal Power Commission and the producer required to refund to its customers the increased rate, the producer or taxpayer would be entitled to take credit on its subsequent reports for the taxes paid upon the increased rate as provided in sub-section (2) of Section 2a of Article 7047b, V.C.S. The length of time taken by the Power Commission to finally determine the validity of the producer's application for an increased rate is not material.

## SUMMARY

A producer should pay the gas production tax imposed by Article 7047b, V.C.S., taking into account any increased rate put into effect by a bond or Corporate Undertaking in lieu of a bond. If the increased rate is denied by the Federal Power Commission and the producer is required to refund the increased rate to its customers, the tax so paid by reason of the increased rate should be allowed as a credit on subsequent reports as provided by the taxing statute.

Yours very truly,

WILL WILSON
Attorney General of Texas

By s/L. P. Lollar
    L. P. Lollar
    Assistant

LPL:db:wc

APPROVED:

OPINION COMMITTEE:

J.C. Davis, Jr., Chairman

Tom I. McFarling
Jack Goodman
Henry G. Braswell

REVIEWED FOR THE ATTORNEY GENERAL

By : W. V. Geppert